## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHELLE L. Q.,                )
                               )
    Plaintiff,          )
                               )
v.                             )
                               )          Case No. 22-cv-00555-SH
MARTIN J. O'MALLEY,[1]          )
Commissioner of Social Security, )
                               )
    Defendant.          )

### OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michelle L. Q. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

## I.     Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment(s) meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may

2

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff applied for Title II disability benefits on November 2, 2020.  (R. 319-22.)  In her application, Plaintiff alleged she has been unable to work since January 18, 2020, due to conditions including severe posttraumatic stress disorder ("PTSD"), club foot deformity, nightmares, flashbacks, and severe pain in both knees.  (R. 319, 351.)  Plaintiff was 48 years old on her last insured date of December 31, 2020.  (R. 17, 319.)  Plaintiff has a GED and past relevant work as a water truck driver and landscape laborer.  (R. 65-66, 352.)

Plaintiff's claim was denied initially and upon reconsideration.  (R. 222-28, 232-37.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted.  (R. 238-39, 42-72.)  The ALJ then denied benefits and found Plaintiff not disabled.  (R. 15-35.)  The Appeals Council denied review on October 28, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.  Plaintiff now appeals.

## III.   The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2020.  (R. 17.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 18.)  At step two, the ALJ found Plaintiff to have the following severe impairments: (1) degenerative disc disease; (2) degenerative joint disease of the bilateral knees;

(3) bilateral foot tendonitis and plantar fasciitis; (4) obesity; (5) depressive disorder; and (6) PTSD.  (*Id.*)  At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment.  (R. 18-21.)

The ALJ concluded that Plaintiff had the RFC to perform sedentary work with numerous additional physical and mental limitations.  (R. 21.)  Pertinent to this appeal, the physical RFC did not include any limitations on reaching, handling, and fingering, and the mental RFC found Plaintiff able to "understand, remember[,] and perform simple tasks."  (*Id.*)  The ALJ then provided a recitation of the evidence that went into this finding.  (R. 21-33.)  At step four, the ALJ found Plaintiff unable to perform her past relevant work.  (R. 33.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as addresser, final assembler, and semiconductor loader.  (R. 33-34.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 35.)

## IV.   Issues

### A.   Plaintiff's Allegations of Error—Reorganized

Throughout her brief, Plaintiff raises numerous, often disjointed, allegations of error in her challenge to the denial of benefits.  The Court understands Plaintiff to contend that:

(1)   the ALJ erred in failing to reopen Plaintiff's prior application (ECF No. 11 at 4);

(2)   the ALJ erred in failing to properly consider all evidence from a prior claims period (*id.* at 3-8);

(3)   the ALJ erred in failing to explain why the RFC in this case was "less restricted" that the RFC in the prior period (*id.* at 6, 8);

(4)   the ALJ conducted a flawed consideration of prior administrative medical findings and the 2021 medical opinion of Denise LaGrand, Psy. D. (*id*. at 7-8, 11);

(5)   the ALJ erred in her RFC evaluation of Plaintiff's neck, shoulder, arm, and hand impairments (*id*. at 8-13);

(6)   the ALJ relied on boilerplate language and failed to link her symptom findings to specific evidence (*id*. at 10-11); and

(7)   the ALJ failed to resolve a conflict between Plaintiff's RFC and the jobs identified at step five (*id*. at 13-15).

Having considered the ALJ's decision and the administrative record, the undersigned finds no error.

### B.    A Warning

Before addressing these arguments, the Court notes that Plaintiff's brief falls far short of the requirements of LCvR5-1 and its associated procedures. *See Administrative Procedures for Social Security Actions under 42 U.S.C. § 405(g)*, https://www.oknd.uscourts.gov/administrative-procedures-actions-under-42-usc-405g (last visited Mar. 20, 2024). Among other things, a plaintiff's brief should list and number each specific error on appeal and then "discuss each error . . . in detail and explain why that error requires a reversal or a remand of the Commissioner's decision." *Id*. As Plaintiff's counsel has done numerous times before this Court, the list of errors in Section II substantially balloons in Section III. (*Cf*. ECF No. 11 at 3 *with id*. at 4-15.) For instance, while Plaintiff's first allegation of error ostensibly touches only on the ALJ's failure to apply "the correct legal standards when assessing the medical opinions," she spends a large portion of her time describing how the ALJ constructively reopened the record (*id*. at 4-7) and making various RFC-related arguments (*id*. at 8-10). Similarly, while ostensibly arguing that the "ALJ failed to properly assess the consistency of Claimant's complaints" (*id*. at 3), Plaintiff jumps back into an argument about the ALJ's

consideration of medical evidence (*id.* at 11). This stream-of-conscious style makes Plaintiff's contentions difficult to discern, and her arguments teeter on the edge of being undeveloped. *See Eacret v. Barnhart*, 120 F. App'x 264, 266 (10th Cir. 2005) (unpublished)[2] (a lack of organization and specificity in a brief, such as "combining various claims of error," "is a dangerous practice, because we are not required to speculate on what a party is arguing or to craft her arguments for her"). Plaintiff's counsel is directed to follow the local rules in future briefs or risk waiving arguments not adequately listed in the identification of errors on appeal.

## V.  Analysis

### A.  Reopening Prior Application Periods

Plaintiff previously applied for disability for a period beginning March 1, 2015. (*See, e.g.*, R. 79.) This application was originally denied on March 1, 2016 (R. 76) and ultimately resulted in an ALJ decision finding Plaintiff not disabled from March 1, 2015, through January 17, 2020 (R. 113).[3] Plaintiff's current alleged onset date is January 18, 2020. (R. 319.)

Plaintiff argues the ALJ erred in failing to explicitly reopen her prior application when the "decision and discussion during the hearing make[] it clear she constructively reopened [Plaintiff's] old claims." (ECF No. 11 at 4.) The undersigned disagrees.

#### 1.  Reopening in General

A determination or decision may be reopened within 12 months of the date of the notice of the initial determination "for any reason," and within four years for "good cause." 20 C.F.R. § 404.988. Here, there is no assertion or evidence that the ALJ

---

[2] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[3] The ALJ's decision was affirmed on appeal. (*See* R. 202-16.)

explicitly reopened the decision on Plaintiff's disability from March 1, 2015, to January 17, 2020.

Instead, Plaintiff argues the ALJ caused a *de facto* reopening of the prior decision by discussing "medical records dated in 2014, 2017, 2018, and 2019 and noting they were 'considered in this decision'." (ECF No. 11 at 4.)  Plaintiff is correct in one respect.  "When the ALJ reconsiders <u>the merits</u> of an application that was previously denied, the application is considered reopened as a matter of administrative discretion, and subject to judicial review to the extent it has been reopened." *Carson v. Barnhart*, 140 F. App'x 29, 40 (10th Cir. 2005) (unpublished) (emphasis added and internal quotations omitted).

But, the Tenth Circuit has long rejected Plaintiff's argument that "an examination of medical evidence from earlier adjudicated periods somehow reopens the previously rejected claim . . . ." *Id.* (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 n.8 (10th Cir. 2004) (alterations omitted)); *see also Aretha R. v. Kijakazi*, No. 22-CV-244-MTS, 2023 WL 3818359, at *3-4 (N.D. Okla. June 5, 2023) (rejecting a nearly identical argument from Plaintiff's counsel).  "If simply reviewing evidence relating to a previous claim is viewed as a reconsideration on the merits, the previous case would be constructively reopened every time a successive claim is filed."[4]  *Kevin M. v. Comm'r*, No. 3:21-CV-00113-MK, 2022 WL 17690153, at *3 (D. Or. Dec. 15, 2022).  Rather, in cases finding constructive reopening, more is required than the mere consideration of prior evidence; for example, there is often the same onset date in the prior application and the current

---

[4] An ALJ is, generally, to consider all the evidence in the record.   20 C.F.R. § 404.1520(a)(3).   But, it is the claimant who is responsible for providing evidence in support of their disability.  *See* 20 C.F.R. §§ 404.1512(a), 404.935(a).  If consideration of evidence were all that was needed to reopen a prior period, a claimant could simply submit evidence from that period to the current ALJ; wait to see if the ALJ considers that evidence; then argue the prior application was constructively reopened when she does.  This intolerable result would render the regulations on reopening a nullity.

application.  *See, e.g.*, *Rodriguez v. Astrue*, No. C12-0694-TSZ-MAT, 2012 WL 6917605, at *11 (W.D. Wash. Dec. 27, 2012) ("the ALJ considered on the merits the issue of plaintiff's disability with an onset date of December 14, 2001, the same onset date alleged in the 2005 application"); *Vance v. Comm'r of Soc. Sec.*, No. 3:11-CV-172, 2012 WL 1931863, at *6 n.1 (S.D. Ohio May 29, 2012) ("Because Plaintiff requested the same onset date on her subsequent application for benefits, that application may also stand as a request for reopening of the initial denial of the prior application").  As such, contrary to Plaintiff's contentions, simply reviewing evidence from a prior period is not a *de facto* reopening.

### 2.      Constructive Reopening in This Case

There was no constructive reopening in this case.  The ALJ was explicit throughout her decision that the evidence pertinent to her findings arose between the alleged onset date and Plaintiff's last insured date.  For instance, while the ALJ considered evidence from before and after Plaintiff's alleged onset of disability, she explicitly stated—roughly 17 times—that records from before or after the insured period were "not pertinent to the period of disability in question."  (R. 23-24, 26-27, 32.[5])  During the RFC phase, the ALJ reiterated that "the claimant's alleged onset date is January 18, 2020, and her date last insured is December 31, 2020."  (R. 28.)  The ALJ then concluded that Plaintiff "was not under a disability . . . from January 18, 2020, through the date last insured."  (R.16.)  In deciding Plaintiff's disability from January 18 to December 31, 2020, the ALJ also was not faced with a "duplicate claim" of whether Plaintiff was disabled from March 1, 2015, to

---

[5] The ALJ referenced Dr. LaGrand's 2017 consultative examination merely to compare its consistency with Dr. LaGrand's 2021 exam.  (R. 31-32.)  The ALJ also considered Plaintiff's medical records from November 2019 to set a baseline for the insured period. (*See e.g.*, R. 26, 28.)

January 17, 2020.  *Cf. Taylor for Peck v. Heckler*, 738 F.2d 1112, 1114 (10th Cir. 1984).

Nor did the ALJ hold an evidentiary hearing on issues from the prior application.  *Cf. id.*

at 1114-15.  Instead, the ALJ considered the evidence submitted and conducted a hearing

on an entirely different issue—Plaintiff's disability between January 18 and December 31,

2020.  Whatever evidence the ALJ reviewed, she did not—in any way—consider the merits

of the prior claim.

### 3.   Alleged Error in not Explicitly Reopening This Case

To the extent Plaintiff argues the ALJ was <u>required</u> to reopen the prior application

period, this argument is also rejected.  Absent a constitutional question, an ALJ's decision

not to reopen a claim is not a final decision subject to judicial review.  *Califano v. Sanders*,

430 U.S. 99, 107-09 (1977); *see also Smith v. Barnhart*, No. 04-2197-GTV, 2005 WL

589758, at *3 (D. Kan. Mar. 11, 2005) ("Absent a colorable constitutional claim or a *de

facto* reopening, an ALJ's refusal to reopen a claim is not a final decision subject to judicial

review.").  There are no constitutional questions presented by Plaintiff; there was no *de

facto* reopening; thus, there can be no further judicial review.

### B.   Consideration of Prior Evidence

Plaintiff next appears to argue that, because she believes the ALJ constructively

reopened the prior disability period, the ALJ was required to review all evidence from that

period.  (ECF No. 11 at 3-8 (arguing, for instance, that the ALJ's review of evidence was

"truncated" and failed to "consider the whole record as required").)  Because the ALJ

failed to do so, Plaintiff contends, this latest decision was not based on substantial

evidence.  As no constructive (or *de facto*) reopening occurred, however, these arguments

fail.

### C.   Consideration of Prior RFCs

Plaintiff similarly argues that, because the ALJ constructively reopened the prior

disability period, she was obligated to explain why the current RFC was less restrictive than the prior-period RFCs.  (*Id.* at 6.)  Plaintiff does not offer any particular reason why this would be required.  Even when reopened, the ALJ's decision is still evaluated "by determining whether the findings are supported by substantial evidence and by determining whether the decision was in accord with applicable law and regulations." *Taylor*, 738 F.2d at 1115.  In any event, there was no constructive reopening, and Plaintiff's arguments based on such a reopening fail.

### D.   Consideration of the 2021 LaGrand Opinion and the Prior Administrative Medical Findings

Plaintiff's next discernable argument centers around the 2021 consultative examination by Dr. LaGrand.  (ECF No. 11 at 7-8, 11.)  Plaintiff complains that the ALJ found the administrative medical findings "mostly persuasive" despite the fact they "minimized or ignored Dr. LaGrand's findings" and claims the ALJ "failed to account for Dr. LaGrand's opinions about marked and moderate impairments . . ., only noting [that Dr. LaGrand's] report was after the [date last insured] and that Claimant differed in reporting why her last job ended."  (*Id.* at 7, 11.)  Because the ALJ's discussion of these opinions was appropriate, the undersigned finds no reversible error.

#### 1.   Medical Opinions & Administrative Medical Findings— Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  A prior administrative medical finding is "a finding . . . about a medical issue made by . . . agency medical and psychological consultants at a prior level of review" and may cover (1) the existence and severity of impairments; (2) the existence

and severity of symptoms; (3) whether the impairment(s) meets or equals a listing; (4) the claimant's RFC; (5) whether the impairment(s) meets the duration requirement; and (6) how failure to follow prescribed treatment, drug addiction, and alcoholism relate to the claim. *Id.* § 404.1513(a)(5).

When considering an opinion or prior administrative finding, an ALJ does not defer or give it any specific evidentiary weight. *Id.* § 404.1520c(a). Instead, the ALJ evaluates its "persuasiveness" by considering five factors.[6] *Id.* § 404.1520c(a) & (c). Of those five factors, the ALJ must always explain how she considered only two—supportability and consistency.[7] *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). In conducting the consistency analysis, the Social Security Administration also considers whether there are "internal conflicts within the evidence from the same source." *Evaluating Med'l Opinions and Prior Admin.*

---

[6] These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant; (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

[7] The ALJ need only discuss the other factors when there are two or more differing medical opinions/prior administrative findings about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(3). Even then, the ALJ discusses only those factors that are "most persuasive." *Id.*

*Med'l Findings–Claims filed on or after Mar. 27, 2017*, Program Operations Manual System ("POMS"), DI 24503.025(E)(2).

## 2. The ALJ's Evaluation of the Opinions & Findings

Here, the ALJ followed the above steps for both the LaGrand opinion and the prior administrative medical findings.

First, the ALJ determined that the state agency assessment of Plaintiff's mental impairments was "mostly persuasive" because it was "consistent with the objective record . . . ." (R. 32.)  However, the ALJ noted that the evaluation was not as supported as it could be, since it "did not examine the claimant or have any psychometric testing performed to provide a fully informed decision." (*Id.*)  While the ALJ did not use the magic word, "supportability," she discussed the medical evidence and the supporting explanations presented by the medical source. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Shirley v. Comm'r*, No. 3:21-CV-00455, 2022 WL 3083702, at *6 (M.D. Pa. Aug. 3, 2022) ("an ALJ is not required to 'chant every single magic word correctly [in] an otherwise thorough and well-reasoned opinion'" (quoting *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200 (3d Cir. 2019)) (collecting cases).  As such, the ALJ's evaluation of the prior administrative medical findings met the regulation's articulation requirements.  The undersigned will not reweigh the ALJ's findings.

Second, the ALJ's assessment of Dr. LaGrand's opinion was not as limited as Plaintiff claims, and sufficiently complied with the regulations.  For supportability, the ALJ noted that "the claimant did not provide accurate information to this examiner as evidenced by reporting she used a walker and cane on a regular basis . . . and [that] she stopped driving two years prior which was inconsistent with her testimony that she continued to drive." (R. 31.)  The ALJ also observed that the "fairly normal findings from the consultative examination" did not support Dr. LaGrand's findings of "marked

impairment[s] with work interruptions due to [Plaintiff's] psychiatric symptoms and [difficulties] interacting with coworkers and the public." (*Id.*)  The ALJ further noted that Dr. LaGrand's records indicate "the claimant was less than forthcoming with details of her history and she answered many questions in a vague way and resisted efforts to gather more detail." (*Id.*)

Moreover, the ALJ considered how Plaintiff's statements on the 2021 exam compared with those in her 2017 consultative examination with Dr. LaGrand.  (R. 31-32.)  This appears to be an attempt to assess "internal conflicts within the evidence from the same source."  POMS, DI 24503.025(E)(2).  However, even if the Court treats this comparison as another examination of supportability, the ALJ also considered Dr. LaGrand's opinions in light of the lack of "any mental health records provided from [Plaintiff's] alleged onset date to her date last insured."  (R. 32.)  *See Torres v. Kijakazi*, No. CV 20-440 SCY, 2021 WL 4307201, at *8 (D.N.M. Sept. 22, 2021) (a claimant's "lack of treatment history is fair game for evaluating whether" an "opinion is consistent with the other evidence in the record").  The ALJ then weighed Dr. LaGrand's findings against evidence in which Plaintiff participated in group counseling after her date last insured.  (R. 32.)  Considering the lack of evidence available for a consistency analysis, this was sufficient under the regulations.  As such, the ALJ appropriately articulated her assessment of the LaGrand opinion.

### E.    The RFC & Plaintiff's Neck, Shoulder, Arm, and Hand Issues

During the portion of her brief ostensibly discussing the ALJ's assessment of medical opinions, Plaintiff contends that "her proven neck, shoulder, arm, and hand impairments" were "not properly considered and accounted for by the ALJ," maintaining that they "should have at least resulted in limitations on reaching, handling, and fingering in the hypothetical question and RFC."  (ECF No. 11 at 8-9.)  Later, Plaintiff expands on

these arguments, asserting the ALJ failed to analyze the impact of her nonsevere right shoulder impairment in combination with her other impairments; erred in not finding her neck impairment to be medically determinable; and failed to include neck-related restrictions in the use of her arms or hands in the RFC. (*Id.* at 12-13.) As noted below, at various times, Plaintiff has attributed numbness or tingling in her arms or hands to her shoulder or neck issues. The Court, therefore, considers Plaintiff's arguments relating to arms and hands in the context of her medically determinable shoulder impairment and her non-medically determinable neck impairment.

### 1.    RFC Considerations—Generally

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.*

The Commissioner makes the RFC decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (while the "record must demonstrate that the ALJ considered all of the evidence," she "is not required to discuss every piece of evidence," only that which supports her decision, as well as the uncontroverted evidence she "chooses not to rely upon" and "the significantly probative evidence [she] rejects"). Additionally, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including . . . [those] that are not 'severe' . . . when we assess your residual functional capacity.").

### 2.      Plaintiff's Shoulder

At step two, the ALJ found Plaintiff to have the non-severe impairment of right shoulder impingement syndrome (R. 18) but did not include any restrictions related to shoulder movement in the RFC (R. 21).

Plaintiff broadly contends the ALJ engaged in impermissible picking and choosing of medical evidence by not considering a finding—from January 2019, a year <u>before</u> her onset date—that she had impingement syndrome of the right shoulder and radiating pain and numbness in her right hand and fingers following a fall.  (ECF No. 11 at 6 (citing R. 821); *see also* R. 820-21.)   Plaintiff also points to evidence indicating that she complained of shoulder pain in October 2019 and April 2021.  (*Id.* (citing R. 1408 & R. 1187); *see also* R. 1187 ("Patient recently developed some upper back, neck, and shoulder pain.").)  However, the ALJ considered—at step two—evidence that Plaintiff had an impingement syndrome and that she complained of right shoulder pain during the period at issue—January 18 to December 20, 2020.  (R. 18.)  The ALJ also noted that Plaintiff had normal motion in her upper extremities in April 2020; requested a prescription for a rowing machine in December 2020; and did not receive any treatment for her shoulder during the relevant period.  (*Id.*)  In determining Plaintiff's RFC, the ALJ further noted that, in March 2020, Plaintiff reported she was working "more in the yard" (after reporting a few months earlier that "she worked out cutting firewood for exercise") and "did yard work, burned firewood, and stayed active."  (R. 26 (citing R. 1389-90, 1393).)  The ALJ then discounted Plaintiff's statements regarding her limitation—such as her inability to do housework or yard work—as compared to these statements and her longitudinal medical evidence.  (R. 27-28.)  The ALJ observed that Plaintiff had "normal upper extremity range of motion" in May 2020 (R. 26-27 (citing R. 1385)) and again mentioned Plaintiff's request for a rowing machine prescription in December 2020 (R. 29

(citing R. 1374)).   While the ALJ may not have cited the exact evidence Plaintiff references, it is clear the ALJ considered Plaintiff's assertions of pain and her diagnosis.

The Court further finds that Plaintiff has failed to show any harm resulted from the ALJ's assessment—even if she failed to properly consider pre- and post-disability period evidence.   Other than vaguely referring to reaching, handling, and fingering limitations, Plaintiff does not point to any relevant evidence showing she had limitations beyond those found by the ALJ.

### 3.    Plaintiff's Neck

As for Plaintiff's neck issue, the ALJ found this not to be a medically determinable impairment.   (R. 18.)   The ALJ noted that, in November 2019—just before the relevant period—Plaintiff reported to her doctor that her neck did not hurt, and that, on exam, no neck impairments were otherwise found.   (*Id.* (citing R. 1393).)   The ALJ also noted that, during the relevant period, there were no references to any neck issues.   (*Id.*)   In determining the RFC, the ALJ noted Plaintiff's testimony that it hurt to turn her neck up and down and that her neck problem was affecting her arms.   (R. 23.)   During this assessment, the ALJ again noted that Plaintiff disclaimed any neck pain in November 2019 and recounted a March 2020 examination finding that Plaintiff's neck was supple (R. 26 (citing R. 1390, 1393).)   The ALJ again took into account Plaintiff's activities and these March 2020 exam results in discounting the intensity, persistence, and limiting effects of Plaintiff's symptoms and her neck pain specifically.[8]   (R. 27-28.)

---

[8] The ALJ also noted the February 2021 exam by Shephali Sharma, D.O. (R. 27 (citing 1062-68)), which includes the finding referenced in Plaintiff's brief that she had reduced range of motion in her neck (ECF No. 11 at 6-7 (citing R. 1064, 1067)).   The ALJ, however, explained that this examination contained "medical evidence not pertinent to the period of disability in question" and apparently rejected it.   (R. 27.)

Plaintiff complains the ALJ "engaged in picking and choosing of evidence" as to her neck.  (ECF No. 11 at 9.)  However, other than an October 2019 x-ray showing mild-to-moderate cervical spondylosis (R. 1404), Plaintiff does not point to any evidence that the ALJ ignored.  In determining an RFC, the ALJ looks to the effects of a claimant's <u>limitations</u>, not merely their diagnoses.  *See, e.g.*, 20 C.F.R. § 404.1545(a)(3) ("We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.").  Plaintiff does not show what difference her prior x-ray would make (even if relevant) given the ALJ's consideration of Plaintiff's lack of neck pain the month after the x-ray; the lack of treatment for any neck issues during the relevant period; and Plaintiff's physical activities during the relevant period.  As such, there was no error.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165-66 (10th Cir. 2012) (though the claimant argued "the ALJ mischaracterized or inadequately considered" the examination notes of two physicians, because neither of their exams "undermine[d] the ALJ's conclusions," and because the court could "follow the adjudicator's reasoning in conducting [its] review," any "mere[] technical omissions in the ALJ's reasoning [did] not dictate reversal").

Plaintiff also faults the ALJ for not finding her neck issue to be medically determinable, given her prior diagnosis and treatment.[9]  (ECF No. 11 at 9 n.1.)  The Commissioner agrees this was likely an error, just not a reversible one.  (ECF No. 14 at 14 n.4.)  A failure to find an impairment medically determinable can, in some cases, constitute an error in determining the RFC, because "the ALJ is . . . required to consider

---

[9] It is not clear what treatment Plaintiff received for her cervical spine, other than being "[a]dvised on analgesics and exercises" and doctors ordering an MRI.  (R. 1411.)  Indeed, when Plaintiff reported back to the doctor "to discuss MRI cervical spine," she stated it was "not her neck but her back that hurts" and reported working outside and cutting firewood.  (R. 1393.)

medically determinable impairments in the RFC . . . whether severe or not." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished).  Even so, there is no reversible error "if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Id.*  Here, the ALJ's consideration of Plaintiff's neck impairment did not stop at step two.  Instead, at step four, the ALJ again considered Plaintiff's complaints relating to her neck, as outlined above.  Thus, even if Plaintiff's neck issues were a medically determinable impairment, they were adequately considered in formulating the RFC, and there was no error.

### F.   Plaintiff's Symptoms.

In Plaintiff's next claim—that the ALJ failed to properly assess her symptoms—Plaintiff broadly contends that (1) the ALJ "resorted to boilerplate language to find Claimant not fully believable" and (2) the ALJ did "not link specific evidence to her credibility conclusion."  (ECF No. 11 at 11.)

### 1.   Symptom Assessments—Generally

When evaluating a claimant's symptoms, the ALJ uses a two-step process.  *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529 (regulation governing the evaluation of symptoms).  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged.  SSR 16-3p, at *3.  Second, once such impairments are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work.  *Id.* at *4.

Factors the ALJ should consider as part of this evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness,

and side effects of medication; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).[10]

### 2. Evaluation of Plaintiff's Symptoms

Here, the ALJ's opinion adequately accounted for Plaintiff's symptoms. After the ALJ considered Plaintiff's subjective complaints (R. 22-23) and the medical evidence of record (R. 23-33), the ALJ engaged in a lengthy discussion of Plaintiff's symptoms that was neither boilerplate nor lacking in evidentiary support.

The ALJ observed, after consideration of the record, that "[t]here are noted inconsistencies between the claimant's subjective complaints and [the] objective medical evidence." (R. 27.) The ALJ then discussed, in detail, those inconsistencies. (*Id.*) For

---

[10] That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

instance, the ALJ noted that Plaintiff testified to falling every day in 2020, but that the record did not demonstrate she fell with near such frequency.  (R. 27-28 (citing exam records).)  Moreover, the ALJ noted that Plaintiff testified to being unable to do house or yard work, but that her medical records indicated "she reported she continued to work outside and was cutting firewood to stay active and manage her anxiety."  (R. 28 (citing records).)  The ALJ also observed that "[a]lthough the claimant described daily activities which were fairly limited, this is not supported by her longitudinal medical evidence of record during the alleged period of disability."  (*Id.*)  Considering the prior six pages of discussion, this additional assessment of the consistency of the persistence, intensity, and limiting effects of Plaintiff's symptoms was neither boilerplate nor unlinked to record evidence.  Plaintiff's argument is rejected.

### G.    Conflict between the RFC and Step-Five Jobs

Finally, Plaintiff contends that two of the step-five jobs (R. 34) are in conflict with her RFC because they require a reasoning level of 2.  (ECF No. 11 at 13-15.)  Specifically, Plaintiff argues her RFC limitation to "understand, remember[,] and perform simple tasks" (R. 21) is incompatible with jobs that would require her to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problem involving a few concrete variables in or from standardized situations," *see, e.g.*, DOT § 209.587-010, 1991 WL 671797 (addresser).

The undersigned has addressed this identical argument numerous times—often in cases briefed by Plaintiff's counsel.  *See James A. M. v. Kijakazi*, No. 20-CV-00372-JED-SH, 2022 WL 1510563, at *4-6 (N.D. Okla. Jan. 26, 2022) (no conflict between reasoning level 2 and "simple, routine tasks"); *Ashley I. S. C. v. Kijakazi*, No. 22-CV-00201-SH, 2023 WL 5628598, at *7-8 (N.D. Okla. Aug. 31, 2023) (same, for "simple, routine instructions and tasks"); *see also Andria D. B. v. Kijakazi*, No. 20-CV-00439-SH, 2022

20

WL 873614, at *4 n.5 (N.D. Okla. Mar. 23, 2022) (no perceived conflict between a reasoning level of 2 and an RFC for "simple, repetitive tasks").  With these decisions in mind, the undersigned agrees with the Commissioner (ECF No. 14 at 15) and finds there to be no conflict between these representative jobs and the RFC.

## VI.    Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 25th day of March, 2024.

Susan E. Huntsman, Magistrate Judge
United States District Court